**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
(Eddie) Jae K. Kim (CA 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Telephone:  (619) 762-1900
Facsimile:  (619) 756-6991

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN T. KIM, on behalf of himself and all others similarly situated, | Case No: 2:20-cv-11452 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **1. Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.;** |
| GAP, INC.; BANANA REPUBLIC; SYNCHRONY BANK, and DOES 1-10, inclusive, | **2. Breach of Contract; and** |
| Defendants. | **3. Breach of the Covenant of Good Faith and Fair Dealing** |
| | **[DEMAND FOR JURY TRIAL]** |

Plaintiff Christian T. Kim ("Plaintiff") hereby brings this Complaint on behalf of himself, all persons similarly situated, and as a private attorney general on behalf of the general public against Defendants Gap, Inc.; Banana Republic; Synchrony Bank, and Does 1 through 10 (collectively, "Defendants"), and alleges as follows:

## I.   **INTRODUCTION**

1.    This class action and public injunctive relief lawsuit arises from deceptive practices designed to eliminate rewards points accumulated by customers through the use of retail credit cards associated with the third largest clothing retailer in the United States— Gap, Inc.  Rewards programs are the primary driver of customers' choice in credit cards, and Defendants took advantage of this fact by heavily marketing the benefits of the rewards program of the Gap, Inc. credit cards, which are serviced by Synchrony Bank.

2.     The benefit to Gap, Inc. and its subsidiary brands, including Gap, Banana Republic, Old Navy and Athleta, in providing and marketing its rewards program are two-fold.  First, the program is designed to strongly encourage customers to prioritize shopping at the Gap, Inc. brands instead of other retailers through enhancing the amount of points that accumulate when shopping at Gap, Inc. brands versus other retailers, as well as through the fact that the accumulated points translate into discounts for items at Gap, Inc. brands. Second, through an agreement with Synchrony Bank, Gap, Inc. receives a portion of Synchrony Bank's profits derived from the credit cards through level of balance, fees and interest accrued on customers' accounts.  However, according to the terms of the agreement between Gap, Inc. and Synchrony Bank, profits by all Defendants may be negatively impacted based on the frequency with which customers make use of the accumulated rewards points accrued through the rewards programs.

3.     Customers must meet stringent qualifications in order to continue to accumulate and sustain the rewards points, including keeping the credit accounts open, in good standing, and not more than two months past due.  Meanwhile, based on Defendants' publicly available marketing materials and disclosures regarding the credit card, Defendants cannot render accumulated rewards points expired as long as these qualifications are met.   However, these representations are false because in certain undisclosed situations, such as upon the replacement of the credit cards due to loss, fraud or other reasons, Defendants take this unrelated event as an opportunity to wipe out customers' accumulated rewards points. This is what happened to Plaintiff.  Defendants benefit from this practice by not having to provide discounts on future purchases at Gap, Inc. brands, thereby increasing the revenue of Gap, Inc., its subsidiary brands, and Synchrony Bank.

4.     Plaintiff, other customers that use the Gap, Inc. credit cards, and the general public have been injured by Defendants' deceptive and unfair practices.  On behalf of himself, other customers and the general public, Plaintiff seeks damages and public injunctive relief for Defendants' violation of California consumer protection laws.

CLASS ACTION COMPLAINT

## II.    PARTIES

5.    Plaintiff is a citizen and resident of Los Angeles, California.

6.    Defendants Gap, Inc. and Banana Republic are incorporated in California, headquartered in San Francisco, California, and operate retail stores throughout California, including in this judicial district.  As such, it is subject to the personal jurisdiction of this Court.

7.    Defendant Synchrony Bank is incorporated in Delaware, headquartered in Utah, and operates credit cards that are used throughout California, including in this judicial district.  As such, it is subject to the personal jurisdiction of this Court.

## III.    JURISDICTION AND VENUE

8.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendants.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because each of the Defendants is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV.    FACTUAL BACKGROUND

### A.    Defendants Heavily Marketed the Rewards Program Associated with the Gap, Inc. Credit Cards in Order to Increase Their Market Share

10.    Gap, Inc., is an American retailer based in San Francisco, California that sells clothing and accessories worldwide.  It is the third largest clothing retail company in the United States, with annual sales around $16 billion[1] and operating 3,345 stores throughout

---

[1] https://www.businessinsider.com/biggest-clothing-companies-in-america-2018-10#3-gap-inc-gap-old-navy-banana-republic-athleta-8

CLASS ACTION COMPLAINT

the world[2]. It operates 6 primary subsidiaries, including Gap, Banana Republic, Od Navy, Intermix, Hill City and Athleta.  Old Navy North America has 1,139 store locations in the United States, Gap North America has 758, Banana Republic North America has 556, and Athleta has 161.[3]

11.    Gap, Inc. and its four subsidiaries Old Navy, Gap, Banana Republic, Athleta, and Hill City (collectively, "Gap Companies") have a credit card program through which frequent customers receive rewards benefits.  The credit cards are provided by a third-party financing company, Synchrony Bank, under a revenue sharing agreement with the Gap Companies.[4]  Under this arrangement, Synchrony provides certain payments to the Gap Companies, including a share of revenues from the performance of the credit card portfolios.  The income and cash flow that the Gap Companies receive from Synchrony is dependent upon a number of factors, including the level of sales on private label and co-branded accounts, the level of balances carried on the accounts, payment rates on the accounts, finance charge rates and other fees on the accounts, the level of credit losses for the accounts, Synchrony's ability to extend credit to customers, ***as well as the cost of customer rewards programs***.[5]

12.    A nationwide survey commissioned by Experian showed that the most common credit cards owned by consumers are retail/store-specific cards, at 41% among respondents.[6]  A study conducted by Citi showed that rewards programs are the most enticing reason for why customers sign up for a specific credit card, as indicated by 67% of customers, even above a low interest rate or a sign-on bonus.[7]  Indeed, in the Experian

---

[2] https://investors.gapinc.com/static-files/b7cbafda-5a38-44e1-aee5-e85b284d0455 (at p. 14).
[3] https://investors.gapinc.com/static-files/b7cbafda-5a38-44e1-aee5-e85b284d0455 (p. 21).
[4] https://investors.gapinc.com/static-files/b7cbafda-5a38-44e1-aee5-e85b284d0455 (at p. 2).
[5] https://investors.gapinc.com/static-files/b7cbafda-5a38-44e1-aee5-e85b284d0455 (at p. 13).
[6] https://www.experian.com/blogs/ask-experian/survey-findings-how-do-consumers-feel-about-credit-cards/
[7] https://www.pymnts.com/news/loyalty-and-rewards-news/2016/credit-card-reward-points/

CLASS ACTION COMPLAINT

survey, the accumulation of rewards was the second most frequent reason for use of credit cards, behind only purchasing things that the customers need.[8]

13.    Capitalizing on this primary marketing objective, the Gap Companies engaged in a ubiquitous marketing campaign touting the rewards program associated with its credit cards.  In their credit card websites, the Gap Companies and Synchrony Bank prominently tout their rewards program through the following representations[9] (representations set forth in brackets below indicate slight variances between the various website for each Gap Company's credit card website):

- [Hi, rewards.  Find a whole new way of rewarding yourself.]
- Get easy access to your Rewards no matter where you are.
    - View & Redeem Rewards with one click
    - Track points to your next Reward & Luxe status
    - Access your earned offers & more
    - SEE MY REWARDS
- [Reap the Rewards.*] or [Your Rewards.* Your style.] or [Reward yourself everywhere you go.*] or [REWARD EVERY MOVE YOU MAKE*]
    - Earn points when you make a purchase at our Gap Inc. family of brands, in-store and online.  Then, redeem your Rewards at any Gap Inc. brand."
    - 5 POINTS For every $1 spent at our brands, in-store and online
    - 1 POINTS For every $1 spent everywhere VISA cards are accepted
    - $5 REWARD For every 500 points you earn
    - *See below for details.
- Enjoy benefits exclusive to Cardmembers.*

---

[8] https://www.experian.com/blogs/ask-experian/survey-findings-how-do-consumers-feel-about-credit-cards/

[9] https://bananarepublic.gap.com/products/banana-republic-credit-card.jsp;  https://www.gap.com/products/gap-credit-card.jsp?ak_t=6B0DAE60ACD37596D12D4D3DB7634C7B173CAD1F400100004BCDD65E1CA17B73;  https://oldnavy.gap.com/products/old-navy-credit-card.jsp; https://athleta.gap.com/products/athleta-card.jsp (Accessed on June 2, 2020.)

CLASS ACTION COMPLAINT

- o $5 Reward for every $100 spent within our family of brands
- o Bonus points shopping days
- o *See below for details.
- Visa Card
  - o If you are approved for a [Banana Republic] Visa Card, you'll earn 1 point for every $1 spent everywhere Visa cards are accepted.
  - o You'll also enjoy Visa Cardmember-only offers and promotions. Plus, Visa Cardmembers earn Rewards faster by using their [Banana Republic] Visa Cards **outside** our brands.
- As a Cardmember, connect with us and earn up to $10 in Rewards.
  - o 2. Enter email address – 500 POINTS
  - o 4. Text Me My Rewards:  Sign up and get your Rewards texted to your mobile phone.
  - o 5. Go Paperless – 500 Points.  Once you click continue, you'll have the option to earn another 500 bonus points by enrolling in paperless billing.

14.   That these websites contain substantial information expressly relating to the practices of Defendant Synchrony Bank with respect to the credit card and rewards programs demonstrates that Defendant Synchrony Bank has approved, ratified, and has control over the content of the Gap Companies' webpages, disclosures and marketing materials with respect to the credit card and rewards program.

15.   At the bottom of the website, there is a disclaimer that is what is referenced by the prominent "*" and "*See below for details" phrase attached to the above representations throughout the websites, that refers customers to click on a link to access the Gap, Inc. credit card Rewards Program Terms and Conditions, and upon clicking the link, takes the customer to a webpage entitled "**GAP INC. CREDIT CARD REWARDS PROGRAM TERMS AND CONDITIONS".**[10]   The Gap Companies and Synchrony Bank are parties to this disclosure and bound by its terms.  This disclosure provides the strict requirements for qualifying for the Rewards Program: "[t]he Rewards Program applies when you make a purchase using your Account and you meet these requirements:

---

[10] https://mail.synchronyfinancial.com/q/Retail_Finance/01_21801_GAPALL_VISASIG_L1

CLASS ACTION COMPLAINT

Your Account is: 1) open, 2) in good standing, and 3) not more than 2 payments past due both at the time you earn Reward Points ("Points") and at the time rewards ("Rewards") are issued and redeemed by you."  Upon shopping at one of the Gap Companies, "[p]oints will be credited to your Account's Reward Program balance."

16.    The only provision regarding expiration of accumulated rewards states: "[t]here is no limit to the amount of Points you can earn for an Account.  Points earned but not used towards the issuance of a Reward will expire 24 months after your last purchase if your Account has been inactive (i.e., there has been no purchase activity on your Account) for 24 months.  Rewards will expire as of the expiration date set forth in the issued Reward."

### B.    Plaintiff Has Been Harmed By the Deceptive Practice of Wiping Out His Accumulated Rewards Points When the Card is Replaced

17.    Since 2016 Plaintiff Christian Kim has had a Banana Republic Credit Card that is serviced by Synchrony Bank.  He elected to open a Banana Republic Credit Card primarily based on its advertisements, marketing and disclosures of the rewards program including on its websites, and, over the years, he purchased products from Gap Companies and other retailers through the use of his Banana Republic Credit Card in order to accumulate points.  Throughout the existence of this account, Plaintiff ensured that his account would remain qualified to accumulate and sustain rewards points.  However, on or about January 2019, Plaintiff had to replace the credit card as a result of having lost the card and/or due to fraud alerts provided by Synchrony Bank. While he was mailed replacement credit cards, Plaintiff discovered that Defendants had eliminated all of his accumulated awards points that were accumulated over a long period of time, and through numerous purchases using the credit card, and which exceeded 800 points.  Over the next few months, Plaintiff contacted Defendants numerous times to complain about the wiping out of all of his accumulated points.   Thus far, Defendants have only restored approximately half of his rewards points while failing to restore the remaining approximately 400 rewards points.

18.   Plaintiff relied on representations Defendants made in publicly available marketing materials and disclosures that represent that the rewards points would not expire as long as his credit card account met the qualifications for continued use of the rewards points.  However, Defendants' representations regarding the cancellation of rewards points were false and harmful to Plaintiff and other customers due to Defendants' unauthorized practice of wiping out rewards points, such as when a credit card has to be replaced due to fraud, loss or other reasons.

19.   If Plaintiff had known that Defendants would prematurely wipe out his accrued rewards points, then he would have considered signing up for a different credit card and would have been able to accrue rewards points and monetary discounts through the different credit card.

20.   As Plaintiff has invested substantial time, energy and purchasing opportunities in using Defendants' credit card versus another credit card and is a regular shopper at Gap Companies' stores, Plaintiff desires to continue to use Defendants' credit card. Therefore, Plaintiff, as well as the public at large, is at risk of future harm by being unable to rely on when and what circumstances that accrued rewards points will be prematurely expired in the future based on Defendants' continued public dissemination of deceptive marketing and account materials.

21.   Therefore, Plaintiff seeks monetary damages, restitution, and public injunctive relief to enjoin Defendants from continuing to engage in this deceptive and unlawful practice which harm other customers as well as the general public.

**V.   CLASS ACTION ALLEGATIONS**

22.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

23.   Plaintiff brings this case, and each of his respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a)(b)(1), (b)(2) and (b)(3) on behalf of the following class.

CLASS ACTION COMPLAINT

24.     The "**National Gap Companies Class**" is composed of:

**All United States residents who have or have had credit cards of Gap, Inc. brands, including Gap, Banana Republic, Old Navy, and Athleta, who have lost accumulated credit card rewards points despite having made use of the credit card within 24 months prior to the loss of the rewards points.**

25.     The "**California Gap Companies Class**" is composed of:

**All California residents who have or have had credit cards of Gap, Inc. brands, including Gap, Banana Republic, Old Navy, and Athleta, who have lost accumulated credit card rewards points despite having made use of the credit card within 24 months prior to the loss of the rewards points.**

26.     Collectively, the above classes are referred to as the "Class".

27.     Excluded from the Class is: (1) any entity in which Defendants have a controlling interest; (2) officers or directors of Defendants; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class members.

28.     This action has been brought and may be properly maintained on behalf of each member of the Class under Federal Rule of Civil Procedure 23.

29.     **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include a significant number of members based on the fact that Gap, Inc. is one of the largest clothing and accessory retail stores and heavily markets its credit cards along with its rewards program for each of its brands.

30.     Upon information and belief, Defendants have databases, and/or other documentation, of its customers' transactions and account enrollment.  These databases and/or documents can be analyzed by an expert to ascertain which of Defendants' customers have been harmed by its practices and thus qualify as Class members.  Further, the Class definitions identify groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as

9

having a right to recover. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

31. **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following:

32. Whether Defendants wiped out portions of customers' credit card rewards points when customers' accounts were sufficiently active; and

33. Whether Defendants misrepresented or deceived customers as to when credit card rewards points would be expired.

34. **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendants' alleged wrongful conduct committed against Plaintiff and all of the Class members are substantially the same because all of the contracts between Defendants and their customers were identical as to all relevant terms, and all of the marketing materials and misrepresentations that customers were exposed to were identical or substantially similar, and thus uniform for Plaintiff and all Class members. Accordingly, in pursuing his own self-interest in litigating his claims, Plaintiff will also serve the interests of the other Class members.

35. **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and his counsel intend to prosecute this action vigorously.

36. **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** The matter is properly maintained as a class action under Rule 23(b)(3) because the common questions of law or fact identified herein and to be identified through discovery

predominate over questions that may affect only individual Class members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of this matter.  Because the injuries suffered by the individual Class members are relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendants' wrongful conduct.  Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.  In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy and allowing Defendants to retain the proceeds of their ill-gotten gains.

37.    Plaintiff anticipates the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class members.  Upon information and belief, Defendants' own business records and/or electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, Plaintiff anticipates the use of additional media and/or mailings.

38.    This matter is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

1
2
3

    a.     Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the Class format, prosecution of separate actions by individual members of the Class will create the risk of:

4
5
6

    1.     Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

7
8
9
10
11
12
13

    2.     Adjudication with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

14
15
16
17

    b.     Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

18
19

    1.     The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

20
21

    2.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

22
23

    3.     The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

24
25

    4.     The difficulties likely to be encountered in the management of a class action.

26
27  / / /
28  / / /

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW
#### Cal. Bus. & Prof. Code § 17200, *et seq.*

39.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

40.    Plaintiff, who has suffered injury in fact and has lost money or property as a result of Defendants' violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("UCL"), alleges this cause of action on behalf of himself and as a private attorney general on behalf of the members of the general public.

41.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Defendants' conduct related to the wiping out of accumulated rewards points on qualifying accounts.

42.    Defendants committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by representing in publicly available marketing materials and disclosures that it would only expire rewards points under certain specific circumstances, but instead engages in an unauthorized practice of expiring rewards points under the unrelated event of replacement of the physical credit card, a circumstance that is not included among the specific circumstances listed in the marketing materials and disclosures.

43.    Defendants' practice is also unfair since it has no utility and, even if it did, any utility is outweighed by the gravity of harm to Plaintiff, other customers, and the general public. Defendants' practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

44.    Defendants knew, or should have known, that its representations were false, deceptive, and misleading. There were reasonably available alternatives to further Defendants' legitimate business interests.

45.     Plaintiff reviewed the publicly available marketing materials and disclosures around the time he signed up for the account.  He does not recall reading or being told that Defendants would engage in this improper practice.  Instead, the materials and disclosures indicate to the contrary—that Defendants would not engage in this improper practice.

46.     Plaintiff, reasonable consumers and the general public had reasonable expectations that Defendants would not wipe out accumulated rewards points anytime a credit card needs to be physically replaced.

47.     Reasonable consumers and the general public had no way of knowing that Defendants engaged in false, deceptive, and misleading advertising, and in relying on such material misleading representations and/or omissions could not have reasonably avoided the injuries that they suffered or will suffer.

48.     Defendants' wrongful conduct is ongoing and, upon information and belief, part of a pattern or generalized course of conduct.

49.     As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff, other customers, and the general public suffered and will continue to suffer harm.

50.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks restitution on behalf of himself and the Class, an injunction on behalf of himself and the general public enjoining Defendants from continuing to engage in the unfair competition alleged above, or any other act prohibited by law, to prevent future consumers from being misled by Defendants' actions.  To the extent that the rewards points and other accrued benefits cannot be comparably converted into monetary damages, this claim under the UCL is also necessary to enforce reinstatement of the wrongfully eliminated rewards points, as well as to protect customers from other non-monetary benefits as part of the rewards programs.  Additionally, Plaintiff and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

51.     The UCL prohibits and provides civil remedies for unfair competition.  Its purpose is to protect both consumer and competitors by promoting fair competition in

commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

52.     By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

53.     The UCL expressly provides for injunctive relief, and also contains provisions denoting its public purpose.  Plaintiff also seeks a claim for public injunctive relief under the UCL, which is brought by a plaintiff acting in the capacity of a private attorney general, not for personal financial recovery, but solely in order to protect the general public and prospective customers from being deceived by the widely available and disseminated public disclosures and marketing materials by one of the largest clothing retail stores in the country and in California, including Defendants' websites, regarding the features and qualifications for the credit card rewards program.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

54.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

55.     Plaintiff and each of the Class members entered into the "**GAP INC. CREDIT CARD REWARDS PROGRAM TERMS AND CONDITIONS**" agreement with Defendants, which sets forth the conditions for accumulating credit card rewards points and the circumstance in which rewards points may be expired.

56.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of this agreement, except for those they were prevented from performing or which were waived or excused by Defendants' misconduct.

57.     Defendants breached the express terms of the agreement by wiping out portions of customers' rewards points without the authority to do so.

58.     As a proximate result of Defendants' breach of the agreement, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## THIRD CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

59.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

60.     Plaintiff and each of the Class members entered into the "**GAP INC. CREDIT CARD REWARDS PROGRAM TERMS AND CONDITIONS**" agreement with Defendants, which sets forth the conditions for accumulating credit card rewards points and the circumstance in which rewards points may be expired.

61.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of this agreement, except for those they were prevented from performing or which were waived or excused by Defendants' misconduct.

62.     Good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

63.     The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendants covenanted that they would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contracts.

64.     Defendants breached the implied covenant of good faith and fair dealing based on their practices of wiping out credit cards rewards points in circumstances that customers would have no way of expecting.  To the extent Defendants retained the right of discretion to expire rewards points, they did so in a manner that frustrated the intended benefits of the bargain to Plaintiff and other customers for the primary purpose of increasing Defendants' own profits.

65.     As a proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendants for himself, other customers, and the general public as follows:

(a)     An order certifying this action as a class action;

(b)     For compensatory damages on all applicable claims and in an amount to be proven at trial;

(c)     An order requiring Defendants to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

(d)     Declaring Defendants' policies and practices to be wrongful, unfair, and deceptive;

(e)     An order on behalf of the general public requiring Defendants to: 1) cease their practice of misrepresenting their credit card rewards program in their publicly available documents and marketing materials; 2) cease implementing their rewards program policy in a manner that is contrary to their representations through the discontinuation of their practice of wiping out accumulated rewards points when a credit card is physically replaced; 3) retore all wrongfully eliminated rewards points and benefits; 4) engage in a corrective marketing campaign to accurately clarify their actual credit card reward program policies to customers and the general

public; and 5) provide notice to customers of their rights regarding Defendants' deceptive and unlawful credit card rewards program policies.

(f)     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law, including Cal. Civ. Code § 1021.5 and the customer agreement; and

(g)     Such other relief as this Court deems just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury for all matters so triable in this action.

Dated: December 18, 2020            **CARLSON LYNCH LLP**

By:   */s/ (Eddie) Jae K. Kim*
      _____
      (Eddie) Jae K. Kim (CA 236805)
      ekim@carlsonlynch.com
      Todd D. Carpenter (CA 234464)
      tcarpenter@carlsonlynch.com
      Scott G. Braden (CA 305051)
      sbraden@carlsonlynch.com
      1350 Columbia St., Ste. 603
      San Diego, CA 92101
      Tel.:  619-762-1900
      Fax:  619-756-6991

      *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT